UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:09-CV-00039-F

| | | |
|---|---|---|
| AUDIO-VIDEO WORLD OF WILMINGTON, INC., INTERNATIONAL TRADE & INVESTMENT, LLC, and CLARA GROVE, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| MHI HOTELS TWO, INC. *f/k/a* MHI RECOVERY MANAGEMENT, INC., MHI HOTELS SERVICES, LLC, and MHI HOTELS, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter comes now before the Court on Plaintiffs' motion for class certification [DE-48] pursuant to Federal Rule of Civil Procedure 23.[1] Defendants have responded and Plaintiffs have replied. Accordingly, the matter is ripe for review and Senior Judge Fox has referred the matter to the undersigned Magistrate Judge for a memorandum and recommendation.

## STATEMENT OF THE CASE

Plaintiffs Audio-Video World of Wilmington, Inc. ("Audio-Video"), International Trade & Investment, LLC ("International Trade"), and Clara Grove ("Grove") (collectively "Plaintiffs") filed their original Complaint [DE-1-1] on February 19, 2009 in New Hanover County Superior Court as a class action complaint, alleging breach of contract, breach of

---

[1] Plaintiffs mention in their motion the possibility of a hearing being set on the class certification issue, but no separate motion requesting such a hearing has been filed. *See* Mot. for Class Cert. at 2. However, the issues have been fully briefed and the Court finds that a hearing would not aid its decision. Accordingly, the Court does not make a recommendation as to Plaintiffs' request for a hearing at this time.

1

fiduciary duties, civil conspiracy, constructive fraud, and unfair and deceptive trade practices.[2] Compl. ¶¶ 45-71. The case was removed to this Court on March 18, 2009 on diversity grounds [DE-1]. Defendants MHI Hotels Two, Inc. *f/k/a* MHI Recovery Management, Inc., MHI Hotels Services, LLC, and MHI Hotels, LLC (collectively "Defendants" or "MHI"), all interrelated corporations, filed their original Answer [DE-8] on April 10, 2009. The Answer included counterclaims against Plaintiff International Trade for tortious interference with contractual relations, defamation, and unfair and deceptive trade practices. Answer ¶¶ 38-59. Defendants subsequently requested and received leave to amend their answer in order to also allege counterclaims against Plaintiff Audio-Video as well as to add additional defamation counts and a new claim for civil conspiracy; their Second Amended Answer and Counterclaims [DE-39] was filed on October 15, 2009.[3] Am. Answer ¶¶ 18-26.

Pursuant to the Scheduling Order [DE-26] dated June 17, 2009, the parties have engaged in extensive discovery regarding the issue of class certification. As a result, Plaintiffs filed a Motion for Class Certification [DE-48] and accompanying Memorandum in Support [DE-49 and DE-50] on March 30, 2010. Defendants responded with a Memorandum in Opposition [DE-58] on May 25, 2010, and Plaintiffs subsequently filed a Reply Memorandum in Support [DE-64] on June 21, 2010.

### STATEMENT OF THE FACTS

A district court must engage in a thorough analysis at the certification stage in order to satisfy itself that the requirements for maintaining a class action have been met; however, it must take care not to assess the probability of plaintiffs' success on the merits of their claims. *Eisen v.*

---

[2] Plaintiffs' original Complaint also requested an accounting and reserved the right to assert any further claims for relief discovered during the course of any such accounting. Compl. ¶¶ 64-67. However, Plaintiffs do not mention this claim in their briefs on the class certification issue.
[3] This document is captioned as a Second Amended Answer and Counterclaims solely due to multiple requests to amend on the part of Defendants. No First Amended Answer and Counterclaims was ever filed.

*Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Haywood v. Barnes*, 109 F.R.D. 568, 575 (E.D.N.C. 1986). However, some consideration of facts that will ultimately bear on the merits is acceptable insofar as it allows a court to reach a decision on the issue of class certification. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365-66 (4th Cir. 2004). Accordingly, knowledge of the following facts is necessary to the Court's understanding of the instant case and its ruling on the class certification issue.

The proposed class action concerns the Shell Island Resort Hotel ("Shell Island"), located in Wrightsville Beach, North Carolina. Shell Island contains 169 individually owned residential units and various common areas. Compl. ¶ 11. The three named Plaintiffs are owners of one or more individual units at Shell Island. *Id.* at ¶¶ 3-5. All unit owners, including Plaintiffs, are members of the Shell Island Homeowner's Association, Inc. ("the HOA"), which elects a Board of Directors ("the Board"). *Id.* at ¶ 10. The Board is empowered to select a Central Rental Agent to provide management services for Shell Island units. *Id.* at ¶ 12. In 1994, MHI entered into an agreement with the HOA to serve as the Central Rental Agent and since that time has served as the primary property manager at Shell Island. *Id.* at ¶ 14. Individual unit owners are not required to use the Central Rental Agent to manage their unit(s); however, those that do choose to utilize this service enter into individual agreements with the Central Rental Agent directly. *Id.* at ¶ 16.

At varying times, each of the three named Plaintiffs in this action entered into such agreements with MHI to manage their individual unit(s). *Id.* These agreements provided in pertinent part that MHI would collect a 40% commission on "total net room revenue," which was defined as being equal to gross room revenue less credit card commission, travel agent commission, and fees related to rental of the unit(s). *Id.* at ¶ 17; *see also* Ex. 5A-E to Pls.'

3

Memo. in Supp. [DE-49-5 through DE-49-9]. However, none of the named Plaintiffs are *currently* party to individual agreements with MHI. Defs.' Memo. in Opp'n at 16.

The foregoing facts do not appear to be in dispute; rather, it is the following events which form the basis for the underlying allegations of this lawsuit. Beginning in 2004, MHI offered a promotional breakfast program (the "Breakfast Package") to all guests staying in the units. Compl. ¶ 19. Plaintiffs describe the Breakfast Package as a "free breakfast buffet" provided to guests on days that they rented Shell Island units. *Id.* MHI refers to the Breakfast Package as "part of the competitive rental rate." Am. Answer ¶ 19. These differing descriptions of the Breakfast Package are indicative of the heart of the controversy between the parties. Both sides agree that, despite any appearance of it being a "free" breakfast, guests were in fact being charged more for their units per night in order to cover the cost of the Breakfast Package. However, the parties differ in their characterizations of what type of additional revenue these charges generated.

It is Plaintiffs' position that MHI was charging guests for the Breakfast Package by increasing *the room rates themselves* by an additional $10 or $20 per night, depending on the season.[4] Pls.' Memo. in Supp. at 4. Under this theory, Plaintiffs believe that this additional $10 or $20 per night was "room revenue," and as such they, as unit owners, were entitled to receive 60% of it as per their individual agreements with MHI. *Id.* at 4-7. However, it is MHI's position that, though the "rate" charged to guests was increased in order to cover the cost of the Breakfast Package, this additional amount was in fact actually "non-room revenue," which they were *not*

---

[4] Defendants estimate that their hard cost of providing the Breakfast Package was $5 per person. Thus, the $10 and $20 amounts were chosen based on average occupancies of 2 and 4 persons per unit, respectively, at different times of the year. Defs.' Memo. in Opp'n at 6.

obligated to share with Plaintiffs under their agreements.[5] Defs.' Memo. in Opp'n at 12-13. In support of this theory, MHI points to the fact that the $10 or $20 per night attributable to the Breakfast Package was billed on internal guest folios not under the category "Room Charge," but rather under the category "Misc-1," along with "other non-room revenue, such as drinks, room service, beach rentals or other package items from third party vendors (golf, for instance)." *Id.*

In sum, Plaintiffs believe that Defendants violated their individual rental agreements by keeping the entirety of the revenue generated by the Breakfast Package instead of collecting only a 40% commission and giving the remaining 60% to them as the unit owners. Pls.' Memo. in Supp. at 4-7. Similarly, Plaintiffs also believe that MHI deceived them by not disclosing the Breakfast Package revenue and instead providing them with owner statements which did not include this additional revenue in the calculation of MHI's commissions. *Id.*; *see also* Ex. 10A-E to Pls.' Memo. in Supp. [DE-50-1 through DE-50-5]. On the contrary, Defendants believe that they were not obligated to give 60% of the Breakfast Package revenue to Plaintiffs *or* include it on the owner statements. Defs.' Memo. in Opp'n at 12-13.

Plaintiffs believe that there are a significant number of other Shell Island unit owners that were similarly deprived of the Breakfast Package revenue and deceived by MHI. Pls.' Memo. in Supp. at 7. As such, they filed this suit originally in state court as a class action and now, in the instant motion for class certification, have proposed that this Court create a class consisting of other such similarly situated unit owners in federal court.

## STANDARD OF REVIEW

Class certification is governed by Federal Rule of Civil Procedure 23. The party seeking class certification bears the burden of proof, and in order to prevail must both demonstrate to a

---

[5] No provision is made in the agreements between Plaintiffs and MHI for splitting of non-room revenue. There does not appear to be any dispute between the parties about the fact that MHI is entitled to keep all such properly categorized revenue.

court that all four requirements of Rule 23(a) have been met as well as show that the action falls into one of three categories as outlined by Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *Gariety*, 368 F.3d at 362; *Haywood*, 109 F.R.D. at 575. A court may not base its decision solely on the allegations in the proponent of certification's complaint, but must "find," after taking a "close look," that the requirements of both Rule 23(a) and 23(b) have been met. *Gariety*, 368 F.3d at 365.

Rule 23(a) requires that the proponent of certification demonstrate (1) that the proposed class is sufficiently numerous so that joinder of all members would be impracticable; (2) that there is at least one question of law or fact common to all members of the proposed class; (3) that the claims or defenses of the named representative(s) are typical of the proposed class; and (4) that the named representative(s) will fairly and adequately represent the proposed class. Fed. R. Civ. P. 23(a)(1)-(4). These requirements are mandatory, and a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Succinctly, the four Rule 23(a) elements are often referred to as the numerosity, commonality, typicality, and adequacy of representation requirements.

Once the requirements of Rule 23(a) have been met, the proponent of class certification must then establish that the action falls into one or more of three alternative categories outlined by Rule 23(b). Here, Plaintiffs seek certification only under the third of these categories, 23(b)(3), and as such, the Court omits any discussion of Rule 23(b)(1) or 23(b)(2). Rule 23(b)(3) requires a plaintiff to prove both (1) that common questions of law or fact predominate over individual questions; and (2) that a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). These two prongs are typically referred to as the

6

predominance and superiority requirements. The predominance requirement is similar to but more stringent than the commonality requirement under Rule 23(a), and tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24; *Gariety*, 368 F.3d at 362. The superiority requirement ensures that there is not some other method which would more efficiently resolve the controversy. *Gregory v. Finova Capital Corp.*, 442 F.3d 188, 191 n.3 (4th Cir. 2006). Rule 23(b)(3) class certification is designed for situations where class action treatment is not as "clearly called for," but may "nevertheless be convenient and desirable." *Amchem*, 521 U.S. at 615; *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001). Rule 23(b)(3) also allows potential class members to opt out of the litigation upon notice if they do not wish to participate. Fed. R. Civ. P. 23(c)(2)(B)(v).

A court must determine whether to certify an action as a class action at an "early practicable time." Fed. R. Civ. P. 23(c)(1). Courts no longer have the option to conditionally certify a class; rather, "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed R. Civ. P. 23(c)(1)(C) advisory committee's notes to 2003 amendment. District courts have wide discretion in deciding whether or not to certify a class and certification decisions are entitled to "substantial deference" on appeal, reversible only for an abuse of discretion. *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 434 (4th Cir. 2003).

## DISCUSSION

Plaintiffs maintain that all four requirements of Rule 23(a) have been met and that the instant action is appropriate for certification under Rule 23(b)(3). Defendants challenge Plaintiffs' proof of all but one of the requirements of Rule 23(a) and both prongs of the Rule 23(b)(3) analysis.

7

## A. Threshold issue of class definition

Before proceeding to its analysis of the Rule 23(a) and 23(b) requirements, the Court must first address the threshold issue of class definition, as it is disputed by the parties. In order to establish standing to maintain a class action, "the court must initially find that a precisely defined class exists, and also that the class representatives are indeed members of the proposed class." *Haywood*, 109 F.R.D. at 576 (internal citations omitted); *see also Falcon*, 457 U.S. at 156.

Here, Plaintiffs define their proposed class as "all individuals, proprietorships, partnerships, corporations, and other entities (hereinafter persons and entities) that own or owned any units within the Shell Island Resort Complex and utilized Defendants MHI as their rental agent(s) for their unit(s) *from 2004 to the present*." Compl. ¶ 32 (emphasis added). Defendants contend that Plaintiffs have not satisfied the threshold issue of class definition because none of the named Plaintiffs themselves have been members of the MHI Rental Program since December 2008 and none are currently members. Defs.' Memo. in Opp'n at 16. Essentially, it is Defendants' position that the class definition as written excludes any person or entity that was not on the MHI Rental Program during the entirety of the period "from 2004 to the present," and that therefore, Plaintiffs are not themselves within the defined class and lack standing to pursue this matter as a class action.

The Court recognizes that the precise meaning of the phrase "from 2004 to the present" is somewhat ambiguous. While it is true that none of the named Plaintiffs are currently participating in the MHI Rental Program and Defendants' reading of the language is not entirely unreasonable, the Court is satisfied that Plaintiffs' phrase "from 2004 to the present" was meant to encompass any person or entity that participated in the MHI Rental Program *at some point*

between 2004 and the present. This reading is further supported by Plaintiffs' response to Defendants' argument in their Reply Memorandum, which reiterated that all three named Plaintiffs did participate in the MHI Rental Program both "*during* the relevant time period" and "*within* the time frame stated in the class definition." Pls.' Reply Memo. in Supp. at 4 (emphasis added).

Using their construction, Plaintiffs would clearly be within the class definition that they have articulated and the Court is satisfied that this is the meaning of the phrase which Plaintiffs intended. Accordingly, the Court finds that Plaintiffs have standing to pursue this matter as a class action.

## B. Analysis of Rule 23(a) factors

### 1. Rule 23(a)(1) numerosity

Rule 23(a)(1) states that the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no precise number of potential class members that makes joinder impracticable; rather, whether the requirement of numerosity has been met is decided on a case by case basis. *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). In the Fourth Circuit, classes with as few as eighteen members have been certified. *Id.*

Here, Plaintiffs contend that their proposed class consists of at least one hundred persons or entities. Compl. ¶ 33. No precise number is articulated, but Plaintiffs are correct in their assertion that one is not necessary and a reasonable estimate will suffice. *See, e.g., Haywood*, 109 F.R.D. at 576-77 ("It suffices that it be apparent, either through direct evidence or a *reasonable estimate* of the numbers of the purported class, that the size of the class makes joinder impracticable.") (emphasis added). Assuming that Plaintiffs' estimate is accurate, it is

9

exceedingly likely that a class in excess of one hundred members would make joinder impracticable. *See Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (suggesting that a "class as large as 74 persons is well within the range appropriate for class certification"). However, while Defendants do not dispute that a class of over one hundred would make joinder impracticable, they do argue that Plaintiffs have supplied no *actual* evidence of the proposed class size and therefore have not carried their burden of demonstrating numerosity. Defs.' Memo. in Opp'n at 24-25.

The parties do not dispute that Shell Island is composed of 169 individual units. Therefore, the Court finds Plaintiffs' assertion that there are a large number of "owners *potentially* affected by the Defendants' challenged practices" to be reasonable under the circumstances. Pls.' Memo. in Supp. at 12 (emphasis added). Defendants are correct that Plaintiffs have presented no specific evidence indicating what percentage of unit owners *actually participated* in the MHI Rental Program. However, the parties do not dispute that during the relevant time frame, MHI served as the Central Rental Agent for Shell Island. Furthermore, Defendants themselves admit that "the owners of 144 of the 169 units—more than 85%—chose MHI to manage and rent their properties in 2009." Defs.' Memo. in Opp'n at 2. Thus, it appears that Defendants, despite themselves knowing the considerable extent of the MHI Rental Program, are attempting to penalize Plaintiffs for not producing, at this stage, hard documentation of the exact number of individual owner agreements with MHI.

Although Defendants are correct that Plaintiffs have not provided specific evidence, the Court is inclined to rely on Plaintiffs' reasonable estimate that the proposed class contains in excess of one hundred members. Such a number is sufficiently numerous that joinder of all

members would be impracticable. Accordingly, the Court finds that the numerosity requirement of Rule 23(a)(1) has been met.

### 2. Rule 23(a)(2) commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) "does not require that all, or even most issues be common, nor that common issues predominate, but only that common issues exist." *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993).

Here, Plaintiffs have outlined numerous common questions of law and fact both in their Complaint and in their Memorandum in Support.[6] Even a cursory reading of the parties' submissions to the Court indicates that many of these issues are in fact points of contention which may require eventual adjudication. Also worthy of note, nowhere in their Memorandum in Opposition do Defendants take issue with Plaintiffs' ability to satisfy their burden as to the commonality requirement. Though not dispositive, this apparent concession carries some weight in light of the fact that Defendants *have* contested all other components of Plaintiffs' Rule 23(a) and Rule 23(b) showings.

The Court is convinced that there are numerous questions of law and fact present that are common to the class in the instant case. Accordingly, the Court finds that the commonality requirement of Rule 23(a)(2) has been met.

---

[6] For example, "[w]hether Defendants owe Plaintiffs and Class Members sixty (60) percent of the monies received for the breakfast program; . . . [w]hether Defendants breached their fiduciary duties to Plaintiff and Class Members by concealing the revenues received for the breakfast program; . . . [w]hether Defendants MHI engaged in unfair and deceptive trade practices in concealing from Plaintiffs and the Class Members the additional revenues Defendants were receiving from the guests for the breakfast program; [and] . . . [w]hether Plaintiffs and Class Members are entitled to recover compensatory damages." Compl. ¶ 34; Pls.' Memo. in Supp. at 14-16.

### 3. Rule 23(a)(3) typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims." *Gen. Tel. Co. of the Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980). A claim of a class representative is typical if it "arises from the same event or course of conduct which gives rise to the claims of other class members and is based on the same legal theory." *Haywood*, 109 F.R.D. at 578. "[T]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of the class members, differences in the amount of damages claimed, or even differences in the availability of certain defenses against a class representative." *Id.*

Here, Plaintiffs contend that their claims are typical of the class that they seek to establish. Essentially, Plaintiffs' theory of the case is that they were deceived by Defendants regarding the additional revenue generated by the Breakfast Package, which caused them to lose out on additional income and gave rise to claims for breach of contract, breach of fiduciary duties, civil conspiracy, constructive fraud, and unfair and deceptive trade practices. Pls.' Memo. in Supp. at 18. The Breakfast Package was offered to all guests in all units. Therefore, it stands to reason that Plaintiffs' allegations, if true, would be applicable to any other Shell Island individual unit owner who entered into a substantially similar agreement with Defendants during the relevant time period. Plaintiffs claim that all Shell Island unit owners that were members of the MHI Rental Program entered into identical agreements, and Defendants have provided no proof to the contrary. As such, Plaintiffs' claims appear to arise from the same events and be based on the same legal theory as those of the other proposed class members.

However, Defendants argue that Plaintiffs' claims are not typical because Defendants have lodged several counterclaims against two of the named Plaintiffs—Plaintiff Audio-Video and Plaintiff International Trade—which will play a prominent role in any resulting trial. Defs.' Memo. in Opp'n at 23-24. Defendants have presented no defenses that would be unique to the named Plaintiffs; rather, their contention that the claims are not typical rests on the basis of these counterclaims.

The only Fourth Circuit case to examine the effect of a counterclaim on Rule 23(a)(3) typicality indicated that a counterclaim, in and of itself, "simply does not create the kind of conflict" that would defeat typicality. *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1269 (4th Cir. 1981). More recently, courts in other parts of the country have reached similar conclusions. *See, e.g., Owner-Operator Indep. Driver Ass'n v. Mayflower Transit, Inc.*, 204 F.R.D. 138, 147 (S.D. Ind. 2001) ("[A] court may consider the potential for a counterclaim and still find the typicality requirement satisfied for class certification purposes."); *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 595-96 (E.D. Cal. 1999) ("The mere existence of a counterclaim does not preclude class certification. Were it otherwise, every motion for class certification would be defeated simply by the vehicle of filing a counterclaim against the named plaintiffs.").

Defendants cite no authority for their proposition that counterclaims necessarily defeat typicality. Even assuming, *arguendo*, that a counterclaim *could* defeat typicality, Defendants do not explain how their particular counterclaims will implicate issues distinct from those related to Plaintiffs' claims. Defendants simply state that "MHI's counterclaims will play a prominent role in both MHI's defense against of [sic] Plaintiffs' claims and its claims for affirmative relief. . . . Plaintiffs will have to invest significant time and energy in defending MHI's counterclaims, and

13

demonstrating how their own case is not motivated by an improper purpose." Defs.' Memo. in Opp'n at 23-24. This statement, without more, does not provide sufficient information for the Court to refuse certification on the basis of Defendants' counterclaims.

The Court believes that Plaintiffs' claims are typical of the claims of the class they seek to represent. In addition, without more, the Court will not find that Defendants' counterclaims preclude a finding of typicality. Accordingly, the Court finds that the typicality requirement of Rule 23(a)(3) has been satisfied.

### 4. Rule 23(a)(4) adequacy of representation

Rule 23(a)(4) requires that the named representative(s) "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to do so, the named representative(s) must have both a desire to pursue the action vigorously and no substantial conflicts with the proposed class members.[7] To that end, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Gunnells*, 348 F.3d at 425 (quoting *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). In addition, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. For a conflict of interest to defeat the adequacy requirement, the conflict must be fundamental. *Gunnells*, 348 F.3d at 430 (citations omitted). A conflict is not fundamental when all class members "share common objectives and the same factual and legal positions [and] have the same

---

[7] At one time, many cases discussing Rule 23(a)(4) also found it to require that class counsel be qualified, experienced, and able to conduct the litigation. *See, e.g., South Carolina Nat. Bank v. Stone*, 139 F.R.D. 325, 330 (D.S.C. 1991). Since 2003, the adequacy of class counsel has been governed instead under Rule 23(g), but Plaintiffs have mentioned it in their brief as part of adequacy of representation nonetheless. Pls.' Memo. in Supp. at 22. Therefore, the Court merely notes that Defendants raise no challenge to the adequacy of Plaintiffs' counsel and the Court is not aware of any issue concerning the adequacy of Plaintiffs' counsel.

interest in establishing the liability of [defendants]." *Id.* at 431. Merely speculative conflict should be disregarded at the class certification stage. *Ward*, 595 F.3d at 180.

The Supreme Court has repeatedly held that the Rule 23(a)(4) adequacy of representation requirement "tend[s] to merge" with the commonality and typicality requirements of Rule 23(a)(2) and Rule 23(a)(3), which together help to "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20 (quoting *Falcon*, 457 U.S. at 158 n.13). While the fact that the Court believes, as discussed in Sections B.2 and B.3, *supra*, that Plaintiffs have satisfied their burden as to the commonality and typicality requirements weighs in their favor, this does not end the inquiry and each element must be addressed separately. For example, a plaintiff may have typical claims without being an adequate representative. *See, e.g., Pruitt v. Allied Chem. Corp.*, 85 F.R.D. 100 (E.D.Va. 1980) (holding that seafood producers had typical claims against water polluter but were not adequate representatives because of historical antagonism and competitive interests).

Here, Plaintiffs maintain that there is a "perfect identity" between their claims and those of the proposed class. Pls.' Memo. in Supp. at 21. Defendants, on the other hand, contend that Plaintiffs are not adequate class representatives because (1) each of the named Plaintiffs possesses "individual characteristics which render it or her inadequate" to represent the class; and (2) there are fundamental conflicts between Plaintiffs and the proposed class which they seek to represent. Defs.' Memo. in Opp'n at 17. Each of these contentions will be addressed in turn.

### i. Burden of proof as to Rule 23(a)(4)

As a preliminary matter, the parties disagree as to who has the burden of proof on the adequacy of representation issue. Defendants point out that the Fourth Circuit has repeatedly placed the burden to prove *all* of the Rule 23(a) factors on the party seeking class certification, and contend that this naturally encompasses Rule 23(a)(4)'s adequacy of representation requirement. *Id.* However, Plaintiffs argue that the burden for Rule 23(a)(4), in contrast to the burden for Rule 23(a)(1)-(3), is on Defendants to prove *inadequacy*. Pls.' Memo. in Supp. at 20. Plaintiffs cite *Haywood*, 109 F.R.D. 568, and *In re Se. Hotel Props. Ltd P'ship Investor Litig.*, 151 F.R.D. 597 (W.D.N.C. 1993), in support of their proposition that the burden rests on an opponent of class certification to prove inadequacy.

At the outset, the Court acknowledges that both *Haywood*, a 1986 decision from this Court issued by Judge Fox, and *In re Se. Hotel*, a 1993 decision from the Western District of North Carolina, appear to place the burden of proving inadequacy on the opponent of class certification. However, more recent case law from the Fourth Circuit has held that the party *seeking* class certification bears the burden of proof on each of the Rule 23(a) elements. *See. e.g. Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006) ("[W]e have stressed in case after case that it is not the defendant who bears the burden of showing that the proposed class does not comply with Rule 23, but that it is the plaintiff who bears the burden of showing that the class does comply with Rule 23."); *see also Gariety*, 368 F.3d at 362; *Lienhart*, 255 F.3d at 146. In addition, although the Fourth Circuit has not singled out the Rule 23(a)(4) adequacy of representation burden for special clarification, the language in at least one recent opinion indicates that the burden for this factor rests on the proponent of class certification. *See Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385 (4th Cir. 2009) ("Because [proponent] bears the

16

burden of showing that Rule 23(a)(4) is satisfied . . . there was no abuse of discretion."). Furthermore, at least one published decision in this District more recent than *Haywood* has placed the burden for adequacy on the proponent of class certification. *In re Panacryl Sutures Prods. Liab. Cases*, 263 F.R.D. 312, 323 (E.D.N.C. 2009) ("Plaintiffs here *have not met their burden* of showing that the claims of the prospective class representatives would take into account the variations in state law that preclude a finding of typicality [in order to still find adequacy].") (emphasis added).

While recognizing the contrary holding in *Haywood*, the undersigned is compelled to apply what appears to be the established standard in this Circuit that the burden of proving compliance with *all* of the Rule 23 requirements, including the Rule 23(a)(4) adequacy of representation requirement, rests on the proponent of class certification. Therefore, in the instant case, the burden is on Plaintiffs to convince the Court that they will adequately represent the interests of the proposed class.

### ii. Individual characteristics of Plaintiffs

Defendants believe that each of the named Plaintiffs possesses "individual characteristics which render it or her inadequate" to represent the class. Defs.' Memo. in Opp'n at 17. They advance different arguments as to this point for each named Plaintiff, each of which will be addressed in turn.

### a. Plaintiff Audio-Video

First, Defendants point out that Plaintiff Audio-Video is a dissolved corporation which no longer owns any interest in Shell Island as of December 31, 2009.[8] Defs.' Memo. in Opp'n at 21; *see also* Ex. N to Defs.' Memo. in Opp'n [DE-58-15]. Defendants argue that Plaintiff

---

[8] At this time, the Court is not aware of the fate of the two Shell Island units owned by Plaintiff Audio-Video and declines to address how its dissolution might affect this litigation.

Case 7:09-cv-00039-F   Document 75   Filed 12/08/10   Page 17 of 34

Audio-Video's dissolved status renders it unable to serve as a class representative. In support of this proposition, Defendants note a North Carolina statute which prevents a dissolved corporation from carrying on "any business except that appropriate to wind up and liquidate its business affairs." N.C. Gen. Stat. § 55-14-05(a) (2010). According to Defendants, "purporting to represent the interests of allegedly hundreds of other individuals or companies in a class action litigation cannot possibly constitute business 'appropriate to wind up and liquidate [Plaintiff Audio-Video's] business affairs.'" Defs.' Memo. in Opp'n at 21-22. In response, Plaintiffs point to language in the same North Carolina statute which states that "dissolution of a corporation does not ... prevent the commencement of a proceeding by or against the corporation in its corporate name." Pls.' Reply Memo. in Supp. at 6; N.C. Gen. Stat. § 55-14-05(b)(5) (2010).

At the outset, the Court notes that there is some truth to Defendants' observation that commencing a proceeding designed to wind up business affairs and acting as a class representative in large scale litigation may not be one and the same. However, Defendants have provided no authority in support of their proposition that this difference precludes Plaintiff Audio-Video from serving as a class representative and the Court is unable to locate independent North Carolina authority addressing the question.

Furthermore, as a general matter, Plaintiffs are correct that a dissolved corporation may commence a proceeding in a North Carolina court. Plaintiffs also have not provided authority directly on point; however, the cases that *are* cited by Plaintiffs do tend to establish, in conjunction with the statute and lack of authority to the contrary, the propriety of dissolved corporations filing suits as part of their efforts to wind up and liquidate their affairs. *Mica Indus., Inc. v. Penland*, 107 S.E. 2d 120 (N.C. 1959) (holding that corporation with suspended

18

charter retained right to sue); *Baker v. Rushing*, 409 S.E. 2d 108 (N.C. Ct. App. 1991) (holding that dissolved partnership was nonetheless amenable to suit); *see also S. Mecklenburg Painting Contractors, Inc. v. Cunnane Group, Inc.*, 517 S.E. 2d 167 (N.C. Ct. App. 1999) (distinguishing between rights acquired during period of unclear status and rights acquired before it, and interpreting phrase "may not carry on any business except that appropriate to wind up and liquidate its business and affairs" to not include rights acquired during unclear period).

Accordingly, the Court finds Defendants' challenge to Plaintiff Audio-Video's capacity to serve as a class representative to be without merit.

### b. Plaintiff International Trade

Next, Defendants point out that Plaintiff International Trade is a South Carolina Limited Liability Corporation ("LLC") not registered to do business in North Carolina. Defs.' Memo. in Opp'n at 22. At the time of the parties' briefing on the class certification issue, this appears to have been the case, and Plaintiffs effectively conceded as much in their Reply Memorandum. Pls.' Reply Memo. in Supp. at 7. Based on this fact, Defendants argued that North Carolina law prevents a foreign LLC transacting business in North Carolina from maintaining an action in a North Carolina court (or, by extension, a federal court in the state) without first obtaining a certificate of authority from the Secretary of State. Defs.' Memo. in Opp'n at 22; N.C. Gen. Stat. § 57C-7-03 (2010).[9]

Since, at the time of briefings on the class certification issue, Plaintiff International Trade had not obtained a certificate of authority, Defendants' argument certainly appears to have deserved discussion. However, the Court notes that Plaintiff International Trade appears to have

---

[9] The text of the statute is as follows: "No foreign limited liability company transacting business in this State without permission obtained through a certificate of authority under this Chapter shall be permitted to maintain any action or proceeding in any court of this State unless the foreign limited liability company shall have obtained a certificate of authority prior to trial. An issue arising under this subsection must be raised by motion and determined by the trial judge prior to trial." N.C. Gen. Stat. § 57C-7-03 (2010).

filed for and received a Certificate of Authority subsequent to the parties' briefing on this issue, on or about July 27, 2010. *See* Exhibit A (screenshot of Secretary of State website entry for Plaintiff International Trade) and Exhibit B (Application for Certificate of Authority by Plaintiff International Trade). As such, this particular issue regarding the adequacy of Plaintiffs' representation now appears to be moot.

Accordingly, the Court finds Defendants' challenge to Plaintiff International Trade's capacity to serve as a class representative to be without merit.

### c. Plaintiff Grove

Finally, Defendants argue that Plaintiff Grove's failure to participate meaningfully in the instant litigation renders her an inadequate class representative. In support of this proposition, Defendants assert that Plaintiff Grove did not provide responses to interrogatories or document production, attempted to avoid having her deposition taken in North Carolina, and was "recruited" to the lawsuit by Plaintiff Audio-Video and Plaintiff International Trade. Defs.' Memo. in Opp'n at 23. In response, Plaintiffs point out that Plaintiff Grove *did* ultimately travel the 7 ½ hours from her home in Georgia to North Carolina for her deposition and argue that nothing else precludes her from serving as a class representative. Pls.' Reply Memo. in Supp. at 7.

The standard for what constitutes sufficient plaintiff involvement to serve as a class representative is not an exacting one. "In a complex lawsuit . . . the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." *Gunnells*, 348 F.3d at 430. In addition, even a plaintiff who has o*nly read the pleadings and conferred with other representatives and counsel* can be an adequate representative. *Gariety*, 368 F.3d at 370.

Here, though Defendants have asserted that Plaintiff Grove has neglected her duties as a class representative, Plaintiffs have provided an affidavit from Plaintiff Grove in which she asserts that she has conferred with counsel and has a basic understanding of the case. Aff. of Clara Grove ¶ 7 [DE-64-2]. This, in and of itself, is likely sufficient to satisfy the low standard for class representative status. Furthermore, Defendants' attempt to rely on the Eleventh Circuit case of *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987), for their proposition that Plaintiff Grove is an inadequate representative is misguided. *Kirkpatrick* involved a plaintiff whose "participation [was] so minimal that they virtually [had] abdicated to their attorneys the conduct of the case," leaving the class with *no other* viable representatives. *Id.* The Court does not believe that Plaintiff Grove's conduct rises to the level of "abdication." Furthermore, even assuming, *arguendo*, that Plaintiff Grove standing alone is an inadequate representative, there are two other named Plaintiffs here that the Court finds to be adequate insofar as to make maintenance of a class action appropriate.

Accordingly, the Court finds Defendants' challenge to Plaintiff Grove's capacity to serve as a class representative to be without merit.

### iii. Conflicts between Plaintiffs and the proposed class

Defendants believe that there is a fundamental conflict between Plaintiffs and the class they seek to represent which renders Plaintiffs' representation inadequate. Namely, Defendants maintain that, as a whole, the individual unit owners have a "vested interest in MHI's continuing economic viability, focus on the management of Shell Island, and goodwill." Defs.' Memo. in Opp'n at 18. The three named Plaintiffs are no longer members of the MHI Rental Program and therefore, Defendants believe that they do not share this vested interest with the majority of the overall proposed class. *Id.* Defendants argue that "[t]he pursuit of this lawsuit at all, and

certainly any judgment obtained," will have a "significant and detrimental effect" on MHI's ability to serve as the Central Rental Agent, an effect that would not be felt by those who are no longer with MHI. *Id.* at 19-20. Similarly, Defendants also believe that Plaintiffs' status as former members of the MHI Rental Program leaves them with no incentive to consider any possibility of a non-monetary settlement in this action. *Id.* at 20. Finally, Defendants believe that Plaintiffs are pursuing this lawsuit out of a "personal vendetta," against the expressed wishes of at least some other unit owners and without regard for any potentially adverse effect it might have on Shell Island property values. *Id.* at 19, 21.

In response, Plaintiffs argue that they are "seeking to recover monetary damages associated with the Defendants' concealing additional revenue received . . . [and] [i]t is in the best interest of Class members to recover all monetary amounts they are entitled to." Pls.' Reply Memo. in Supp. at 5. In addition, Plaintiffs claim that if an attractive non-monetary settlement were proposed, they would consider re-establishing their relationship with MHI in order to accept it. *Id.* at 6. Finally, Plaintiffs believe that Defendants have not provided proof that other unit owners oppose the lawsuit due to their interest in MHI's continuing viability sufficient to establish a likelihood of a fundamental conflict of interest and preclude Plaintiffs' representation. *Id.*

Defendants rely heavily in their brief on *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337-39 (4th Cir. 1998), for the proposition that if Plaintiffs have different remedial interests from a significant portion of their proposed class, a fundamental conflict of interest exists and class certification should be denied based on lack of adequacy of representation. However, because Plaintiffs take issue with the holding of *Broussard* as it relates to the instant case, further discussion of its reasoning is merited here.

In *Broussard*, a group of Meineke franchisees brought a class action asserting claims based on Meineke's misuse of funds that had been paid by the franchisees for advertising. The plaintiffs sought to include in their class both current franchisees and former franchisees who had chosen to terminate their relationships with Meineke. *Id.* In fact, three kinds of prospective plaintiffs existed in *Broussard*: (1) former franchisees; (2) "EDP franchisees," a group of current franchisees who had waived their rights to damage awards as part of their agreements with Meineke; and (3) "non-EDP franchisees," another group of current franchisees with no restrictions on their potential relief, which included the plaintiffs. *Id.*

The Fourth Circuit found that a potentially serious conflict of interest existed between these three groups with respect to the appropriate relief. In short, the former franchisees had an interest only in maximizing any damages Meineke would have to pay, the EDP franchisees claimed that "their ongoing business relationship" and their "interests in the long-term financial health of the company" were in conflict with "efforts to wring a large damage award out of defendants," and the non-EDP franchisees, such as the plaintiffs, were somewhere in the middle, having an interest both in the continued vitality of Meineke and a large damage award. *Id.*

Reasoning that "basic due process require[d] that named plaintiffs possess undivided loyalties to absent class members," the *Broussard* court found that the district court had erred in granting class certification because plaintiffs' "residual, forward-looking interest" in Meineke's continued viability could well have "tempered their zeal for damages" and prejudiced the "backward-looking" interests of former franchisees. *Id.* In addition, the court found that any litigation at all, regardless of damages, was "in tension with the evident desire" of many EDP franchisees to put the advertising dispute with Meineke behind them. *Id.* As a result, the

*Broussard* court ultimately reversed the district court's decision to grant class certification, finding that there had been an abuse of discretion.

The Court finds that Defendants' offer of *Broussard* for the proposition that a district court may deny class certification based on a finding of a potential conflict of remedial interests is proper. Furthermore, the Supreme Court has also interpreted the adequacy of representation requirement of Rule 23(a)(4) to preclude class certification in these circumstances. *See Amchem*, 521 U.S. at 595 (noting conflict between one group's interest in generous immediate payments and another's in an ample, inflation-protected fund for the future). Plaintiffs, however, argue that *Broussard* holds merely that "the plaintiffs could not represent the interest of the EDP franchisees because they had signed a release with Meineke from all claims, including the claims at issue in the lawsuit." Pls.' Reply Memo. in Supp. at 5. This statement, while true in part, ignores the more general thrust of the reasoning in *Broussard* as described above. The Fourth Circuit found that the district court should have reasonably been concerned about two potential conflicts: one between the plaintiffs and former franchisees and another between the plaintiffs and the EDP franchisees. In addition, even considering the EDP franchisees' inability to collect monetary damages, their desired relief—avoidance of litigation at all—was considered to be a remedial interest in fundamental conflict with that of the plaintiffs. Accordingly, the Court finds that Defendants' reading of *Broussard* presents a fuller picture of the law in this Circuit on this issue.

Defendants also point out that *Broussard* is not an outlier, citing as examples *AAMCO Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440 (E.D.Pa. 1975), and *Alston v. Virginia High Sch. League*, 184 F.R.D. 574 (W.D.Va. 1999). Both of these cases do indeed support Defendants' proposition and further suggest that the Court is free to deny class certification

based on a conflict of remedial interests. The Court notes that, in addition to the cases cited by Defendants in their brief, several other Circuits have also refused to certify a class in situations analogous to the one at issue here. For example, in *Peterson v. Okla. City Hous. Auth.*, 545 F.2d 1270 (10th Cir. 1976), tenants in a low-rent housing project brought an action challenging a provision in new leases that all tenants be required to pay a security deposit. The Tenth Circuit was convinced that evidence before the district court supported a finding that the named plaintiffs had failed to show how they could fairly and adequately protect the interests of residents who had accepted the deposit requirement as beneficial to them:

> [O]ut of 830 public housing units occupied by elderly tenants, 811 had, without objection, executed the new leases requiring deposits, and . . . many of them had stated that they did not object to the requirements of the new lease and did not support the [lawsuit], believing that the practice of requiring deposits would benefit them by encouraging better upkeep of neighboring units. The interest of these would be antagonistic to the interests of the plaintiffs-appellants.

*Id.* at 1273. Similarly, in *Gilpin v. Am. Fed'n of State, Cty., and Mun. Employees AFL-CIO*, 875 F.2d 1310 (7th Cir. 1989), a group of non-union employees brought an action against a union in order to recover fees that the union had charged all non-union members of a collective bargaining unit. The Seventh Circuit agreed with the district court's ruling that the class representatives could not purport to speak for all 10,000 non-union employees because two types of non-union employees existed—those who wished to weaken/destroy the union and those that simply wished to freeload off of paying union members—and pursuit of damages was compatible only with the former class. *Id.* at 1313. The reasoning of the *Gilpin* court was cited with approval in *Broussard*. *See also Weaver v. Univ. of Cincinnati*, 970 F.2d 1523 (6th Cir.

1992) (agreeing with the reasoning and conclusions in *Gilpin*). Numerous district courts across the country have also reached similar conclusions.[10]

At the outset, the Court begins its Rule 23(a)(4) adequacy of representation analysis in light of the facts of the instant case by reiterating that a district court has a great amount of latitude in making decisions about whether to certify a class. *Ward*, 595 F.3d at 179; *Gunnells*, 348 F.3d at 434. Merely speculative conflict does not require denial of class certification; however, nor does some amount of uncertainty prevent a district judge from denying certification. *See, e.g.*, *Ward*, 595 F.3d at 179-80.

At the time of briefing on the class certification issue, 143 of the 169 units at Shell Island were still being managed by MHI. Defs.' Memo. in Opp'n at 19. This figure constitutes nearly 85% of units, a significant majority. Plaintiffs, on the other hand, collectively own only five units, a small minority, and even the total of 26 units not on the MHI Rental Program (including those not owned by Plaintiffs) constitutes only about 15% of total units at Shell Island. Defendants have provided some proof of the possibility of a fundamental conflict of remedial interests by indicating that some quorum of other Shell Island unit owners who *are* still members

---

[10] *See, e.g., Lukenas v. Bryce's Mountain Resort, Inc.*, 66 F.R.D. 69, 71-72 (W.D.Va 1975), *aff'd, Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594 (4th Cir. 1976) ("[B]y plaintiffs' own estimation only approximately 190 of the 610 purchasers would desire to remain within the class and rescind their purchase contracts. The interests of this minority of purchasers in the suit is clearly antagonistic to that of those purchasers who have a continuing interest in the financial viability of the defendant."); *Pipes v. Life Investors Ins. Co. of America*, 254 F.R.D. 544, 550 (E.D.Ark. 2008) (agreeing that class members who were not current policyholders and sought only monetary relief, such as plaintiff, would not be impacted by increased premiums and thus would not be concerned if defendant raised premium rates going forward); *AAMCO Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440, 446 (E.D.Pa. 1975) ("For those members of the proposed class who are currently maintaining a franchise relationship with Aamco, the continued economic viability and public goodwill of Aamco is a legitimate and real concern. . . . On the contrary, of principal concern to the class of former franchisees is the recovery of maximum monetary damages without regard to the possible adverse impact of this lawsuit."); *Maynard, Merel & Co. v. Carcioppolo*, 51 F.R.D. 273, 277-278 (S.D.N.Y. 1970) (An adequate basis to deny class certification existed when plaintiffs who requested rescission of a merger in addition to damages were less likely than other shareholders in their proposed class who opposed the merger to accept an offer of cash settlement, even though such a settlement might be desired by absent class members.); *Mularkey v. Holsum Bakery, Inc.*, 120 F.R.D. 118, 121 (D.Ariz. 1988) (Court was willing to certify a class containing past, present, and future distributors only as to the question of liability; however, because all proposed representatives were former distributors, the question of damages could not be fairly litigated without a present or future distributor as a class representatives.).

of the MHI Rental Program do not support Plaintiffs' maintenance of the instant action. *See, e.g.*, Ex. 1-6 to Guttenberger Decl. [DE-56-1 through DE-56-5]. In addition, Defendants point out that the Board recently voted overwhelmingly to retain MHI as the Central Rental Agent despite Plaintiffs' efforts to put forth other potential property managers, further indicating a desire on the part of many unit owners to maintain the status quo. Defs.' Memo. in Opp'n at 20. In addition, the Court is inclined to agree with Defendants' contentions that devoting time and attention to a class action lawsuit can only distract MHI from its duties as Central Rental Agent, that a large damage award will jeopardize MHI's continued well-being and potentially the well-being of Shell Island overall, and that the possibility of decreased unit values resulting from poor management seems all too realistic.[11]

However, more importantly, Plaintiffs have provided *no evidence that a single other unit owner* wishes to join their proposed class. Instead, they simply contend that "[i]t is in the best interest of Class members to recover all monetary amounts they are entitled to." Pls.' Reply Memo. in Supp. at 5. While, in a vacuum, this statement might be true, the Court believes it to be at the very least possible and at the most quite likely that, even assuming liability, many of the owners of units still managed by MHI might rather forego the possibility of some small monetary recovery to which they were entitled in the interest of avoiding conflict with the Central Rental Agent. Even Plaintiffs themselves seem to admit that Defendants have provided *some* evidence of a potential conflict, and instead rest their argument in large part on their contention that Defendants have not provided *enough* evidence of a conflict. Pls.' Reply Memo. in Supp. at 6. However, because this argument in turn relies on Plaintiffs' perception that Defendants have the burden of proof as to inadequacy, it must fail. *See* Section B.4.i, *supra*. In

---

[11] The Court declines to address Defendants' contention that Plaintiffs are acting out of a "personal vendetta," as it finds it to not be relevant to the issue of class certification.

addition, the Court notes that at least one Circuit has found that denial of class certification may be appropriate even with very little evidence from the defendant as to the potential for conflict. In *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470 (5th Cir. 1982), the defendant offered no proof of disagreement within the proposed class except the assertion that other potential class members had not "complained about the practice" that plaintiffs were challenging. However, the Fifth Circuit agreed that the district court had a right to be concerned and that there was a very real possibility of inter-class antagonism sufficient to support denial of class certification. *Id.* at 485. Furthermore, though hard evidence would certainly have been helpful, the Fifth Circuit found it "improper to demand much evidence from the defendant that a significant number of class members oppose the plaintiff when it is obvious that a real possibility of antagonism exists," given that the burden of proof for certification issues is on the proponent of certification. *Id.* at 486.

Here, Defendants have provided at least as much evidence to support the possibility of conflict as the defendants in *Horton*. Like in *Broussard*, *Peterson*, and *Gilpin*, there exists a very real possibility that a significant portion of other potential class members do not support the remedial goals of Plaintiffs' lawsuit. Though they might "suffer the same injury," Plaintiffs do not necessarily "possess the same interest" as the other potential class members. *Gunnells*, 348 F.3d at 425 (quoting *E. Texas Motor Freight*, 431 U.S. at 403). Furthermore, and more importantly, it appears likely that Plaintiffs do not "possess undivided loyalties to absent class members." *Broussard*, 155 F.3d at 338.

The Court believes that a significant possibility that a fundamental conflict of remedial interests will arise exists in the instant case. Though neither party has provided an overwhelming amount of evidence, Defendants have raised a real question about the alignment of interests

across the class and Plaintiffs have done virtually nothing to dispel that notion. Therefore, the Court cannot find that Plaintiffs have satisfied their burden of proving adequacy of representation. Courts no longer have the option to conditionally certify a class; rather, "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed R. Civ. P. 23(c)(1)(C) advisory committee's notes to 2003 amendment. Accordingly, the Court finds that the adequacy of representation requirement of Rule 23(a)(4) has *not* been satisfied and, as a result, class certification should be denied at this time.

### C. Analysis of Rule 23(b)(3)

Failure to satisfy any one of the prerequisites of Rule 23(a) is sufficient to support denial of certification of a proposed class. Therefore, since Plaintiffs have not met their burden of proving adequacy of representation under Rule 23(a)(4), the Court need not consider whether they have met their burden of demonstrating predominance and superiority under Rule 23(b)(3) at this time. However, if it is later determined that class certification in the instant case is appropriate under Rule 23(a), the Court reserves the right to revisit the Rule 23(b)(3) issue at that time.

### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiffs' Motion for Class Certification [DE-48] be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds

of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 8th day of December 2010.

DAVID W. DANIEL
United States Magistrate Judge

# Exhibit A



Elaine F. Marshall
*Secretary*

North Carolina
DEPARTMENT OF THE
SECRETARY OF STATE
PO Box 29622 Raleigh, NC 27626-0622 (919) 807-2000

Date: 9/1/2010

**CORPORATIONS**

Corporations Home
Search By Corporate Name
Search For New & Dissolved
Search By Registered Agent
Important Notice
Resale of Tickets Online
Corporations FAQ
Homeowners' Association FAQ
Tobacco Manufacturers
Unincorporated Non-Profits
Dissolution Reports
Non-Profit Reports
Verify Certification
Online Annual Reports

**LINKS & LEGISLATION**

KBBE B2B Annual Reports
SOSID Number Correction
Legislative Updates
Professional Corporations
NCSOS Authority to Dissolve
Register for E-Procurement
Dept. of Revenue

**ONLINE ORDERS**

Start An Order
New Payment Procedures

**CONTACT US**

Corporations Division

**TOOLS**

Secretary of State Home
Secretary of State Site Map
Printable Page

Click here to:

View Document Filings | Sign Up for E-Notifications |
Print apre-populated Annual Report Form | Annual Report Count | File an Annual Report |

Corporation Names

| Name | Name Type |
|---|---|
| NC INTERNATIONAL TRADE & INVESTMENTS LLC | LEGAL |

Limited Liability Company Information

| | |
|---|---|
| **SOSID:** | 1160644 |
| **Status:** | Current-Active |
| **Effective Date:** | |
| **Dissolution Date:** | |
| **Annual Report Due Date:** | |
| **Citizenship:** | FOREIGN |
| **State of Inc.:** | SC |
| **Duration:** | PERPETUAL |

Registered Agent

| | |
|---|---|
| **Agent Name:** | SHIPMAN & WRIGHT, L.L.P. |
| **Office Address:** | 525 MILITARY CUTOFF RD., SUITE 106 WILMINGTON NC 28405 |
| **Mailing Address:** | 525 MILITARY CUTOFF RD., SUITE 106 WILMINGTON NC 28405 |

Principal Office

| | |
|---|---|
| **Office Address:** | 1156 MOLOKAI DR. TEGA CAY SC 29708 |
| **Mailing Address:** | 1156 MOLOKAI DR. TEGA CAY SC 29708 |

Officers

# Exhibit B

**State of North Carolina**
**Department of the Secretary of State**

SOSID: 1160644
Date Filed: 7/27/2010 2:16:00 PM
Elaine F. Marshall
North Carolina Secretary of State
C201019700108

## APPLICATION FOR CERTIFICATE OF AUTHORITY
## FOR LIMITED LIABILITY COMPANY

Pursuant to §57C-7-04 of the General Statutes of North Carolina, the undersigned limited liability company hereby applies for a Certificate of Authority to transact business in the State of North Carolina, and for that purpose submits the following:

1. The name of the limited liability company is _INTERNATIONAL TRADE & INVESTMENTS LLC_ ;

   and if the limited liability company name is unavailable for use in the State of North Carolina, the name the limited

   liability company wishes to use is _INTERNATIONAL TRADE & INVESTMENTS LLC_

2. The state or country under whose laws the limited liability company was formed is: _SOUTH CAROLINA_

3. The date of formation was _12-29-1997_ ; its period of duration is: _UNLIMITED_

4. Principal office information: (*Select either a or b.*)

   a. ☒ The limited liability company has a principal office.

      The street address and county of the principal office of the limited liability company is:

      Number and Street _1156 MOLOKAI DR._
      City, State, Zip Code _TEGA CAY, SC_          County _YORK_

      The mailing address, *if different from the street address*, of the principal office of the corporation is:

   b. ☐ The limited liability company does not have a principal office.

5. The street address and county of the registered office in the State of North Carolina is:

   Number and Street _525 MILITARY CUTOFF RD, SUITE 106_
   City, State, Zip Code _WILMINGTON, NC 28405_          County _NEW HANOVER_

6. The mailing address, *if different from the street address*, of the registered office in the State of North Carolina is:

7. The name of the registered agent in the State of North Carolina is: _SHIPMAN & WRIGHT LLP_

CORPORATIONS DIVISION          P. O. BOX 29622          RALEIGH, NC 27626-0622

*(Revised January 2002)*          *(Form L-09)*

8. The names, titles, and usual business addresses of the current managers of the limited liability company are:
   *(use attachment if necessary)*

   **_Name_**                                          **_Business Address_**

   _BEVERLY  HICE, GEN. PARTNER_        _1156 MOLOKAI DR, TEGA CAY, SC 29708_

   _____          _____

   _____          _____

   _____          _____

9. Attached is a certificate of existence (or document of similar import), duly authenticated by the secretary of state or other official having custody of limited liability company records in the state or country of formation. **The Certificate of Existence must be less than six months old. A photocopy of the certification cannot be accepted.**

10. If the limited liability company is required to use a fictitious name in order to transact business in this State, a copy of the resolution of its managers adopting the fictitious name is attached.

11. This application will be effective upon filing, unless a delayed date and/or time is specified: _____  _____

This the _15_ day of _JULY_____, 20_10_

                                     _INTERNATIONAL TRADE & INVESTMENTS LLC_
                                     Name of Limited Liability Company

                                     _____
                                     Signature of Manager

                                     _BEVERLY  HICE_____
                                     Type of Print Name

Notes:
1. **Filing fee is $250**. This document must be filed with the Secretary of State.

**CORPORATIONS DIVISION**          P. O. BOX 29622          RALEIGH, NC 27626-0622

*(Revised January 2002)*                                       *(Form L-09)*

# The State of South Carolina



## Office of Secretary of State Mark Hammond

## Certificate of Existence

**I, Mark Hammond, Secretary of State of South Carolina Hereby certify that:**

INTERNATIONAL TRADE & INVESTMENTS, LLC, A Limited Liability Company duly organized under the laws of the State of South Carolina on December 29th, 1997, with a duration that is until December 29th, 2047, has as of this date filed all reports due this office, paid all fees, taxes and penalties owed to the Secretary of State, that the Secretary of State has not mailed notice to the company that it is subject to being dissolved by administrative action pursuant to section 33-44-809 of the South Carolina Code, and that the company has not filed articles of termination as of the date hereof.

Given under my Hand and the Great Seal of the State of South Carolina this 12th day of July, 2010.

Mark Hammond, Secretary of State