UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:09-CV-39-F

| | | |
|---|---|---|
| AUDIO-VIDEO WORLD OF WILMINGTON, INC.; INTERNATIONAL TRADE & INVESTMENT, L.L.C.; and CLARA GROVE, Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | O R D E R |
| MHI HOTELS TWO, INC., f/k/a MHI RECOVERY MANAGEMENT, INC.; MHI HOTELS SERVICES, L.L.C., and MHI HOTELS, L.L.C., Defendants. | ) ) ) ) ) | |

This matter is before the court on the parties' cross-objections to the Magistrate Judge's Memorandum and Recommendation ("M&R") [DE-75], recommending denial of the plaintiffs' Motion for Certification of Class Action pursuant to Rule 23(b)(3), FED. R. CIV. P. Contemporaneously with their Objections [DE-78] to the M&R, the plaintiffs moved to Designate Additional Class Representative and to Amend Complaint ("Motion to Amend") [DE-76]. The defendants (collectively "MHI") filed Objections [DE-80] to the M&R and a Response [DE-84] to the Motion to Amend. The objections to the M&R and the plaintiffs' Motion to Amend have been fully briefed and are ripe for disposition.

Rule 72(b), FED R CIV. P., provides in pertinent part that "a party may serve and file specific, written objections to the proposed findings and recommendations" contained in an M&R. Objections must be filed within 14 days of service of the M&R. *See id.* If either party files an objection, the district court must review *de novo* any part of the M&R to which proper objection was made. *See* Rule 72©. The court may accept, reject or modify the magistrate

judge's recommendation, may order an evidentiary hearing, or return the matter to the magistrate judge with instruction. *See id.*

The plaintiffs have objected to the Magistrate Judge's conclusion that they failed to meet their burden under Rule 23(a)(4) of the Federal Rules of Civil Procedure to prove that they fairly and adequately will protect the interests of the class. *See* Plaintiffs' Objection [DE-78] at p. 1. The bases for plaintiffs' objection are: first, that the Magistrate Judge mistakenly placed the affirmative burden of proof on them to prove that they would be adequate representatives rather than requiring MHI to prove the negative; and second, that the record does not support the conclusion that their interests are, or likely will be, antagonistic to, or in conflict with, those of the class they propose to represent. MHI also filed a Memorandum [DE-80] objecting to discrete findings,[1] and undertaking to present its own version and interpretation of the facts and circumstances underlying this lawsuit.

The undersigned has conducted a thorough, *de novo* review of the record in this case, including all the pleadings, memoranda, exhibits, deposition transcripts, sworn statements, arguments of counsel and cited legal authority, as well as the parties' objections and the bases therefor. Additionally, the court has conducted considerable independent legal research on the issues relevant to class certification in general, and the parties' objections to the M&R in particular. Having done so, the court ADOPTS the Magistrate Judge's statement of the basic underlying facts, and, with the exception of the "typicality" analysis, *see infra, Sections B and C,* the rationale and recommendations contained in the M&R, with the following additional remarks.

---

[1] For instance, the defendants contend that the two named corporate plaintiffs lack the capacity to serve as class representatives, and that the remaining individual named plaintiff cannot adequately represent the proposed class.

2

## I. Objections to Memorandum & Recommendation

### *A. Burden of Proof*

The plaintiffs rely heavily on the statement by this court in *Haywood v. Barnes*, 109 F.R.D. 568, 579 (E.D.N.C. 1986) that, "[t]he burden is on the defendant to demonstrate that the representation will be inadequate." *Haywood* quoted *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982), which cited *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 592-93 n.15 (5th Cir. 1979), itself seemingly relying on *Bernstein v. Levenson*, 437 F.2d 756, 757 (4th Cir. 1971). *Bernstein* was brought as a stockholders' derivative action, but had been dismissed by the district court for failure to establish the requisite amount in controversy to support diversity jurisdiction. Reversing the district court, the Fourth Circuit in *Bernstein* also rejected the defendants' alternative argument that dismissal nevertheless was appropriate under Federal Rule of Civil Procedure 23.1 (governing derivative actions) because plaintiffs did not fairly and adequately represent the shareholders' interests. The appellate court observed that the defendants neither had sought amendment by the district court as to its "adequacy of representation" findings, nor assigned error to those findings on appeal.

Extrapolating from *Bernstein* the proposition that a defendant has the burden of proving inadequacy by the named plaintiffs to represent a putative class pursuant to Rule 23(b)(3), is indefensible. *Haywood's* reliance on cases misstating the ruling in *Bernstein* was incorrect, and that mistake will not be repeated here. The Magistrate Judge is correct that the burden of alleging and proving all Rule 23(a) factors is on the proponent of class certification – here, the plaintiffs.

3

### B. Commonality and Typicality of Claims

MHI has not taken issue with Magistrate Judge's finding under Rule 23(a)(2) that "there are numerous questions of law and fact present that are common to the class in the instant case," and that the "commonality" factor has been satisfied. *See* M&R [DE-75], at p. 11. Although in many cases, the commonality and the typicality requirements overlap, *see, e.g., Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000), there is a distinction between the terms. "Traditionally, commonality refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Id.* at 1279 (citation omitted). Here, the plaintiffs' class definition, as interpreted by the Magistrate Judge and adopted herein, adequately describes a group whose members share common characteristics.[2] The undersigned agrees, and adopts the Magistrate Judge's finding that the plaintiffs have satisfied the "commonality" factor in defining the putative class.

The Magistrate Judge also found that the "Plaintiffs' claims are typical of the claims of the class they seek to represent." M&R [DE-75] at p. 14. The focus of his analysis was the effect, if any, of the defendants' counterclaims against two of the named plaintiffs. While the court agrees with the Magistrate Judge that the existence of the counterclaims, alone, does not preclude a finding of typicality, the undersigned respectfully disagrees that the record

---

[2] The putative class consists of " 'all individuals, proprietorships, partnerships, corporation, and other entities . . . that own or owned any units within the Shell Island Resort Complex and utilized Defendants MHI as their rental agent(s) for their units' *at some point* between 2004 and the present." *See* M&R [DE-75], at pp. 8-9 (quoting Complaint [DE-1], Exh. 1, at ¶ 32) (emphasis in original).

4

supports a finding that the plaintiffs have established that their claims are "typical of the claims ... of the [defined] class." Rule 23(a)(3).

Again, the "typicality" inquiry examines the individual characteristics of the named plaintiffs in relation to the class. *Prado,* 221 F.3d at 1278. The Fourth Circuit Court of Appeals on several occasions has addressed the generalities and nuances of the "typicality" requirement of Rule 23(a). For example, in *Deiter v. Microsoft Corp.,* 436 F.3d 461 (4th Cir. 2006), that court explained that Rule 23 "allows named parties to represent absent class members when, *inter alia,* the representative parties' claims are typical of the claims of every class member." *Id.* at 466. *Deiter,* like many appellate opinions on the subject, employed the phrase, " 'as goes the claim of the named plaintiff, so go the claims of the class' " to illustrate the close nexus the representatives' claims must have with those of the class members. *Id.* (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir. 1998) (quoting *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir. 1998) (invoking former GM President, Charles Wilson's, comment to Congress in 1953, that "as goes GM, so goes the nation"))).

It also is oft-repeated that the typicality requirement "goes to the heart of a representative parties' ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements," *Deiter* 435 F.3d at 466 (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 626 n.20 (1997)), and if the variation in the named plaintiffs' claims "strikes at the heart" of the putative class members' causes of actions, denial of class certification is appropriate. *Id.* (citations omitted). *Deiter* instructed that the appropriate analysis of the "typicality" requirement requires comparison of the plaintiffs' claims or defenses with those of the absent class members. *Id.*

5

Although *Dieter*, sensibly enough, began its typicality analysis with the elements of the plaintiffs' *prima facie* case, thee facts in this case demand inquiry at an even earlier point. Regardless of the merit of the plaintiffs' allegations, the record in this case presents the undeniable impression that pursuing this litigation *at all* is contrary to the wishes and interests of many, perhaps most, of the putative class members. The record as the parties have developed it to date strongly suggests, and the court FINDS, that the named plaintiffs' interest in this litigation is anything but typical of the unit owners's shared group interests as a class. As this finding is based on many of the same observations that inform the courts findings and conclusions concerning the "adequacy of representation" requirement, the court will conflate the two.

### C. *Typicality and Adequacy of Representation*

This court's independent review of the record and supplemental legal research confirms the Magistrate Judge's ultimate recommendation that the plaintiffs' request for class certification under Rule 23(b)(3) must be denied. Even if plaintiffs' Motion to Amend were allowed to add an additional plaintiff, such amendment would not correct the shortcomings of their effort to create class action litigation.

The bottom line in this case, as the record exists to date, is that there is absolutely no support for the plaintiffs' suggestion – apart from their self-serving declarations to the contrary – that they do or could represent the interests of the class for which they seek certification under Rule 23(b)(3). The undersigned, like the Magistrate Judge, finds *Broussard* most analogous and instructive. Here, as in that case, there is an overriding conflict between the named plaintiffs and more than a few potential class members, not only in remedial preferences, but far more significantly, in the decision to take up the sword in the first place. "Initially,

pursuing any litigation *at all* was in tension with the evident desire of many [potential class members] to put the . . . dispute with [defendants] behind them." *Broussard*, 155 F.3d at 338 (emphasis added).

Here, as in *Broussard*, the proposed class includes persons who believe "their ongoing business relationship with [the defendant] and their interests in the long-term financial health of the company [is] imperiled by the plaintiffs' efforts to wring a large damage award out of defendants." *Id.* At least some unnamed proposed class members in this case are concerned, not only for continued viability of their rental contracts with MHI, but just as importantly, for protecting the value of their investments in the Shell Island Resort property itself. Some unnamed unit owners' incentive to avoid the inevitable impact on Shell Island Resort property values of a class action lawsuit, under a totality of the relevant circumstances, appears to be far greater than their incentive to collect a percentage of $10 and $20 breakfast charges. *See* Declaration of Rick Guttenberger [DE-56] & Exhs. 1-7 thereto.

On the other hand, the named plaintiffs have demonstrated they value the potential for receiving damages over pursuit of compromise, over protests by their neighbors, and over perhaps more conservative measures than litigation for preservation of the Resort's property values and reputation. *See* Transcript of Jan Bass Depo., Exh. E to [DE-58], at pp. 62-64; Exhs. 1-7 to [DE-56]; *cf.* Transcript of Clara Grove Depo., Exh. F. to [DE-58], at pp. 33-34 (explaining that although she has not talked with any unit owners other than Jan Bass and Beverly Hice about the lawsuit, she assumes the other owners "would like to retrieve the money that they spent;" Ms. Grove is not aware that anyone thinks the lawsuit should not have been filed). The named plaintiffs, of course, have every right to act in accordance with their own interests, but not at the expense of other unit owners who do not share their vision. *See*

7

*Broussard*, 155 F.3d at 339 (observing that "[p]ursuing a damage remedy that was at best irrelevant and at worst antithetical to the long-term interests of a significant segment of the putative class added insult to the injury of abandoning the only remedy in which that segment was interested").

The record amply supports the proposition that the property's unique challenges over the past fifteen years or so, together with the current economic environment, render a class action lawsuit by unit owners against Shell Island Resort Hotel's management company an off-putting prospect (at best) for investors. That sentiment is repeatedly and forcefully represented in the sampling of responses to Beverly Hice's email correspondence to unit owners contained in Exhibits 1-7 to [DE-56]. The named plaintiffs not only have failed to come forward with any evidence that their objectives, interests and strategy actually are shared by anyone other than each other and Mr. Matt, they similarly have offered nothing to counter MHI's demonstration of strong opposition by other unit owners to the pursuit of this litigation *at all*. Furthermore, certification is not appropriate where the "plaintiffs, whose interests opposed those of other class members, 'could not possibly provide adequate representation to a class' including those who benefitted from the acts alleged to have caused harm to the named plaintiffs." *In re Southeastern Milk Antitrust Litigation*, No. 2:07-CV-208, 2:08-MD-1000, 2010 WL 3521747, slip op. at *7 (E.D. Tenn. Sept. 7, 2010) (quoting *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280-21 (11th Cir. 2000)).

It is this court's "responsibility . . . to make sure that the common bond between the class representatives' claims and those of the class is strong enough so that it is fair for the fortunes of the class members to rise or fall with the fortunes of the class representatives." *Hillis v. Equifax Consumer Services, Inc.*, 237 F.R.D. 491, 502-03 (N.D. Ga. 2006). The undersigned

8

FINDS that the named plaintiffs have not carried their burden under Rule 23(a) to demonstrate either the "typicality" or the "adequacy of representation" requirements. Accordingly, MHI's objection to the "typicality" requirement is SUSTAINED under Rule 23(a)(3), and the undersigned DECLINES to adopt the Magistrate Judge's findings and recommendations concerning "typicality." However, the court ADOPTS the Magistrate Judge's findings and recommendation that the named plaintiffs cannot fairly or adequately represent the proposed class as required by Rule 23(a)(4).

### D. Predominance

The Magistrate Judge did not reach the "predominance and superiority" analysis for Rule 23(b)(3) certification because he determined that the preliminary Rule 23(a) factors were not met. The predominance inquiry tests whether the putative class is "sufficiently cohesive" to warrant adjudication by representation. *See Amchem Prods.*, 521 U.S. at 623. The record in this case lacks any suggestion of "cohesiveness" between the named plaintiffs and the unnamed members of the defined class. Just as the plaintiffs have failed to demonstrate that their claims are "typical" of their neighbors', or that they could not be "adequate" representatives for the class they have defined, the record is devoid of evidence that common questions of law or fact predominate over issues or interests specific to the named plaintiffs and possibly a handful of others who might be aligned with them.

For example, named plaintiffs Audio-Video and International Trade & Investment ("ITI") are the subjects of counterclaims by MHI which include tortious interference with contract, defamation *per se*, defamation *per quod*, civil conspiracy, and unfair and deceptive trade practices through their agents, Jan Bass and Beverly Hice, respectively. No other putative

9

class member is an agent of a counterclaim defendant or an individual whose alleged tortious conduct will be litigated in this lawsuit.

While the existence of counterclaims, alone, certainly is no bar to class certification where it otherwise is appropriate, *see Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1269 (4th Cir. 1981), the lurid details alleged by both sides here, together with an unavoidable focus on the historical conduct of two or three of owners, will overshadow the comparably tedious "breakfast program" claim that supposedly is the basis for this lawsuit. Plaintiffs' suggestion that this state of affairs was manufactured by MHI's assertion counterclaims is belied by the record. Nevertheless, and at the very least, issues unique to the named plaintiffs will complicate any class treatment of their breakfast program allegations, confuse the issues, pose additional disincentives for exploration of alternative resolutions, and very likely could prejudice an outcome favorable to a large majority of unit owners.

Indeed, the record strongly suggests that Bass's and Hice's efforts in the past have not been representative of activities collectively endorsed by Shell Island Resort unit owners in their business decisions concerning MHI. Although the named plaintiffs' claims facially arise from their interpretation of past contracts that at least were similar to those MHI had with other participants in the rental program, the record cannot support a finding that the typical putative class member would elect the response the plaintiffs have selected.

Another example appears in a June 21, 2010, affidavit attached to plaintiffs' Reply [DE-64] to MHI's Memorandum [DE-58] opposing class certification. In her capacity as partner of plaintiff, ITI, Beverly Hice refers to an undated "suspected collusion taking place between certain [Board of Directors] members and MHI," and alleges that "the [Board of Directors] made

10

the decision to keep everything under wraps." *See* Affidavit of ITI [DE-64], Exh. 1, at ¶ 14. Hice, also a former Board member,[3] cannot fairly and adequately represent a class that includes unit owners who, themselves, may have been members of the Board of Directors during the period of "suspected collusion" with MHI.

Additionally, while lodging their objections to the M&R, the plaintiffs injected into the lawsuit yet another controversy that appears to involve only their collective four condominium units and MHI. That is, having decided in late 2008 not to enter into rental agreements with MHI for the year 2009, the plaintiffs reversed their position sometime in mid-2009 and sought re-entry into MHI's rental program. According to affidavits filed by the named plaintiffs and supported by the affidavit of "current" Shell Island Resort Homeowners' Association ("HOA") President, Kathleen Cramer, MHI declined plaintiffs' offer to enter into new rental contracts "as a result of the pending litigation." Cramer Affidavit [DE-79], Exh. 3, ¶ 6.[4] Cramer reports that the HOA's attorney determined that "MHI's refusal to allow the Plaintiffs to re-enter the MHI rental program was a breach of the [Central Rental Agreement]."

---

[3] Affidavit of Rick Guttenberger [DE-56], at ¶ 5 ("In early 2009, Beverly Hice joined the Board of Directors . . . after her company [ITI] filed this lawsuit against MHI"). Ms. Hice, in her capacity as partner in ITI, explains that MHI's allegation that she later was "forced" to resign from her BOD seat is untrue. *See* ITI Affidavit, Exh. 1 to [DE-64]. Rather, she avers, "I made a decision to remove myself in an effort to refocus owners' attention to the real issue." *Id.* at ¶ 8. It does not appear that every member of the purported class would agree with her assessment. *See, e.g.*, Exhs. 4, 5 & 6 to [DE-56].

[4] Plaintiff Clara Grove attached to her affidavit [DE-79], Exh. 6, a copy of an email she received from Shell Island General Manager Rick Guttenberger on September 30, 2009, stating, in part, "We would love to have your unit back on the MHI rental program. Unfortunately, since you are a named plaintiff in an active lawsuit against our company, we feel it would be a conflict of interest (at best) for us to rent out your unit." Guttenberger expressed his hope that the lawsuit would not take years, as Ms. Grove anticipated, and that it could "be resolved quickly and amicably," at which time "MHI would gladly be willing to pursue having you back in the rental program."

11

*Id.* at ¶ 8. The balance of Cramer's affidavit describes the apparently ongoing, "he-said-she-said" controversy arising from the plaintiffs' alleged unsuccessful efforts to contract with the entity they have engaged in purported class action litigation. The plaintiffs' own inclusion of these affidavits with their post-M&R filings supplies further evidence of the chasm between their atypical circumstances and the "class" they seek to represent.

## II. Plaintiffs' Motion to Amend

Because the plaintiffs failed to attach to their motion a proposed amended complaint, the court cannot assess the specific allegations they seek to add other than those necessary to joining Mr. Matt. More importantly, joining Mr. Matt is unnecessary to achieve what plaintiffs seek to accomplish, and would not cure what it ailing this lawsuit. Plaintiffs' purpose in adding Mr. Matt was to include as a class representative one owner whose Shell Island unit currently is under rental contract with MHI. *See* Plaintiffs' Memorandum [DE-77], at p. 6. The Magistrate Judge's interpretation of the class definition, as adopted by the undersigned herein, does not require a *current* contract-holder to be a named representative.[5]

The court acknowledges that Mr. Matt believes that, if MHI is determined to have breached agreements with unit owners and/or violated the law, MHI should compensate the victims of such conduct. *See* Matt Affidavit, Exh. 6 to [DE-77], at ¶ 3. The court has no reason to doubt that, "[o]n the basis of information provided to me," Mr. Matt believes MHI breached its agreements and otherwise violated the law "as outlined in the complaint." *Id.* Nor does the court question Mr. Matt's ability or willingness to act as a class representative on that basis, or

---

[5] The Magistrate Judge correctly interpreted plaintiffs' class description to encompass "all individuals, proprietorships, partnerships, corporation, and other entities (hereinafter persons and entities) that own or owned any units within the Shell Island Resort Complex and utilized Defendants MHI as their rental agent(s) for their units" *at some point between 2004 and the present. See* M&R [DE-75], at pp. 8-9 (quoting Complaint [DE-1], Exh. 1, at ¶ 32).

his commitment to carrying out the "best interests of the entire class in monitoring the case, conferring with the Plaintiffs' lawyers, and participating in important decisions in this case." *Id.* at ¶¶ 5-6. However, adding Mr. Matt in no way would improve the plaintiffs' position. Class certification is denied, *not* because the named plaintiffs are not currently participating in MHI's rental program, but because, on the record developed to date, their well-documented personal interests are antithetical to those of some, if not most, members of the putative class. The plaintiffs' Motion to Add a Class Representative and Amend the Complaint [DE-76] is DENIED as futile.

### III. Summary

Overriding and permeating all the Rule 23 factors and considerations is the fact that, notwithstanding the plaintiffs' self-serving declarations of impartiality and zeal for prosecuting the best interests of all the putative class members, even well after entry of the M&R the record contains almost exclusively evidence of unnamed unit owners' strong disagreement with the plaintiffs' election to litigate. In short, the record fails to support a finding that the named plaintiffs qualify to serve as representatives for a class of unit owners who share with them a common interest in litigating issues of law and/or fact, or that such common interest predominates over the concerns of the individual plaintiffs themselves.

The court FINDS as a fact that the plaintiffs have failed to carry their burden under Rule 23(a) to show that their claims are typical of those shared by class members, and that they could be fair and adequate class representatives, and that common issues of law and fact predominate over those unique to themselves. The court further FINDS that the record supports MHI's position that the named plaintiffs' interests in filing and pursuing this lawsuit are in conflict with, and antithetical to, the interests of at least some of the class members in avoiding litigation with MHI and the impact such a lawsuit likely will have on Shell Island Resort unit

13

values, stability of management, desirability of the property as a resort destination, and the like. Finally, the court FINDS that common questions of law or fact do not predominate over issues or interests specific to the named plaintiffs and a handful of others who might be aligned with them.

Having conducted its *de novo* examination of the record, the court has reached the independent determination that class certification pursuant to Rule 23(b)(3) is not available under the circumstances present here. Accordingly, the court OVERRULES both the plaintiffs' [DE-78] and MHI's [DE-80] Objections to the M&R [DE-48], *except insofar as MHI objects to the Magistrate Judge's findings and conclusion as to the "typicality" requirement of Rule 23(a)(4)*. Accordingly the undersigned hereby ADOPTS the Magistrate Judge's recommendation [DE-75] that the plaintiffs' Motion for Class Certification be denied. For the reasons cogently set forth in the M&R, as modified and supplemented by the comments, findings, and observations contained herein, the plaintiffs' Motion for Class Certification pursuant to Rule 23(b)(3), FED. R. CIV. P., is DENIED. The plaintiffs' Motion to Amend and Add Class Representative [DE-76] is DENIED as futile. The Clerk of Court is DIRECTED to continue management of this case.

SO ORDERED.

This, the __18'__ day of March, 2011.

*[signature]*
JAMES C. FOX
Senior United States District Judge